UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

Matthew Hunt Seaberg,

    Debtor.
_____/

Case No.: 6:18-bk-00266-KSJ

Chapter 7

Daniel M. McDermott,

    Plaintiff,
v.

Adv. Pro. No.: 6:18-ap-_____

Matthew Hunt Seaberg,

    Defendant.
_____/

**UNITED STATES TRUSTEE'S COMPLAINT**
**OBJECTING TO ENTRY OF THE DEBTOR'S DISCHARGE**

Daniel M. McDermott, United States Trustee for Region 21, by and through his undersigned counsel ("Plaintiff"), objects to the entry of an order of discharge for Matthew Hunt Seaberg ("Defendant") pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5) and in support alleges the following:

**JURISDICTION**

1. This is an adversary proceeding in which the Plaintiff is seeking the denial of the Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5).

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157, 586 and 1334.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

1

4. The Plaintiff was appointed by the United States Attorney General as the United States Trustee for Region 21, which includes the Middle District of Florida.

5. The Plaintiff has standing to bring this action pursuant to 11 U.S.C. §§ 307 and 727.

6. Venue is proper pursuant to 28 U.S.C. § 1409(a) and Local Rule 1071-1 of the United States Bankruptcy Court for the Middle District of Florida.

7. The deadline for filing an objection to the Defendant's discharge is July 20, 2018. (*See* Doc. No. 38.) This complaint is therefore timely filed.

## PARTIES

8. The Plaintiff is Daniel M. McDermott, the United States Trustee for Region 21, which includes the Middle District of Florida.

9. The Defendant is a college-educated Operations Manager in the fitness industry.

10. The Defendant has more than a decade of experience owning and operating business entities involved in the sale of fitness equipment and fitness-related services.

## FACTUAL ALLEGATIONS

**A.    Procedural Background**

11. On January 17, 2018, the Defendant filed a voluntary chapter 7 petition to initiate bankruptcy case number 6:18-bk-00266-KSJ ("Main Case")[1] and on February 1, 2018, he filed his Schedules, Statement of Financial Affairs and other required documents pursuant to Fed. R. Bankr. P. 1007 and 11 U.S.C § 521 (collectively "Bankruptcy Documents").

12. Carla P. Musselman was appointed as the chapter 7 trustee (the "Chapter 7 Trustee") for the Defendant's bankruptcy case.

13. The initial Section 341(a) Meeting of Creditors took place on February 21, 2018,

---

[1] All docket references herein will be with regard to the filings in the Main Case.

at which time the Defendant appeared and testified. The meeting was continued to April 4, 2018, at which time it was held and concluded by the Chapter 7 Trustee (collectively "Meeting of Creditors").

14. On June 27, 2018, the undersigned conducted a 2004 examination of the Defendant ("2004 Examination") pursuant to a Notice of 2004 Examination and request for documents ("Notice"; Doc. No. 45).

15. The following facts are based on the Defendant's Bankruptcy Documents and papers as filed and as amended in the Main Case, in addition to the Defendant's testimony at the Meeting of Creditors and 2004 Examination.

**B. The Defendant's Petition, Schedules and Statement of Financial Affairs**

16. The Defendant's Bankruptcy Documents were amended multiple times to correct various errors, omissions, and inconsistencies in the Defendant's initial Petition, Schedules, Statement of Financial Affairs, and Statement of Intentions to comport with the Defendant's testimony at the Meeting of Creditors. Such amendments included correcting the spelling of Defendant's name, adding secured debt, adding the Defendant's non-filing spouse as a co-debtor, disclosing various transfers relating to property of the bankruptcy estate, and Defendant's intentions with regard to his secured property interests. (*See* Doc. Nos. 13, 14, 15, 16, 32, 33) ("Amendments".)  The Defendant under penalty of perjury signed the initial Bankruptcy Documents and these Amendments (collectively "Schedules") declaring them to be true and correct.

17. The Defendant is seeking to discharge approximately $988,984.21 in unsecured debt, consisting primarily of credit cards, student loans, taxes, business guarantees, and a Rolex watch purchase.

18. The Defendant's secured debts include a mortgage on his primary residence, purchase money security interests in a 2015 Regal 2800 boat ("Boat"), a 2011 Ford F250 SUPER DUTY truck ("Truck"), and a golf cart. (Doc. No. 13.)

19. The Defendant maintained vehicle lease agreements with Ally Bank for a 2015 Maserati Quattroporte ("Maserati") and with United Leasing for an unidentified vehicle. (Doc. No. 8.)

20. According to the Schedules and the Defendant's testimony, a lawsuit was initiated against the Defendant on or about November 2, 2017 by Johnson Health Tech North America, Inc. ("JHTNA") arising out of the Defendant's business dealings on behalf of Grow Fitness Group, Inc. ("Grow Fitness".) The Defendant identifies JHTNA on Schedule E/F with a claim of $545,928.31. (Doc. No. 13.)

21. On the original Schedule A/B (Doc. No. 8), the Defendant listed: (i) his primary residence with a value of $420,000.00; (ii) his Truck with a value of $0.00; (iii) his Boat with an unknown value; (iv) furniture and furnishings with a value of $2,500.00; (v) 4 televisions with a value of $400.00; (vi) a golf cart with a value of $9,500.00; (vii) a 9 mm pistol, 223 rifle and 45 caliber pistol with a collective value of $300.00; (viii) personal clothing with a value of $100.00; (ix) a wedding ring and watch valued at $200.00; (x) checking and savings accounts valued at $3,531.62; (xi) a 100% interest in Fitness Fixt LLC valued at $0.00; (xii) a 7% interest in Kans LLC valued at $350.00; and (xiii) a term life insurance policy for the benefit of Defendant's wife valued at $0.00, for a total value of $436,881.62 in the Defendant's real and personal property. (*Id.* at 3-8).

22. The Defendant amended his Schedule A/B on April 25, 2018 (Doc. No. 33 at 3-8) to list a value of $15,375.00 for his Truck thereby increasing the total of the Defendant's real and

personal property value to $452,256.62. No other amendments were made to the Defendant's Schedule A/B.

23. The Defendant's Schedule C claimed $116,356.45 of his $436,881.62 property value, including the homestead, as exempt. (*See* Doc. No. 8 at 9-10.) No other amendments were made to Schedule C.

24. On his original Schedule D (Doc No. 8), the Defendant listed his secured debts as: (i) $12,032.67 owing to Bank of America for the Truck; (ii) $103,267.68 owing to BB&T for the Boat; (iii) $310,675.17 owing to Mr. Cooper/Nationstar for the mortgage on his primary residence; (iv) $10,009.74 owing to Sheffield Financial for the golf cart. The total value in secured debt was listed as $435,985.26. (*Id.* at 11-12.)

25. On his First Amended Schedule D (Doc. No. 13), the Defendant added an Internal Revenue Service ("IRS") tax lien for $103,551.66 related to his 2015 personal income taxes to increase the total value of his secured debt to $539,536.92. (*Id.* at 10-12.)

26. On his Second Amended Schedule D (Doc. No. 15), the Defendant made no further edits to the First Amended Schedule D (Doc. No. 13).[2]

27. On his original Schedule E/F (Doc. No. 8), the Defendant listed his unsecured debt as follows: (i) $103,551.66 in priority claims owing to the IRS for his 2015 personal income taxes; (ii) $545,928.31 owing to JHTNA related to the Defendant's business loan guaranty for Grow Fitness; (iii) $88,361.24 owing to American Express on three different credit card accounts last used in August 2017; (iv) $23,611.54 owing to Bank of America on two different credit card accounts last used in December 2017; (v) $19,991.44 owing to Capital One on a credit card account

---

[2] Defendant filed a Third Amended Schedule D (Doc. No. 33 at 9-14), but the Court entered an Order striking the Third Amended Schedule D (see Doc. No. 34) and Defendant filed a Motion to Vacate the Order Striking Amended Schedule D (see Doc. No. 43) which is currently pending.

last used in December 2017; (vi) $128,411.53 owing to Celtic Bank for a business loan guaranty; (vii) $7,275.07 owing to Citibank on a credit card account last used in November 2017; (viii) $700.00 owing to Education Financial Services on a student loan; (ix) $1,016.97 owing to Home Depot on a revolving charge account last used in December 2017; (x) $46,575.67 owing to Kabbage Inc. on a business loan guaranty; (xi) $33,322.00 owing to Mayor's Jewelry for the purchase of a Rolex watch in September 2017; (xii) $2,412.05 owing to Neiman Marcus for a credit card account last used in August 2017; (xiii) $18,290.00 owing to Orlando Magic Ltd. for season tickets; (xiv) $72,088.39 owing to True Fitness Technology for a business debt guaranty; and (xv) $1,000.00 owing to the U.S. Department of Education for student loans. The total amount of priority unsecured debt was listed as $103,551.66 and the nonpriority unsecured debt as $988,948.21. (*Id.* at 13-20.)

28.  On his First Amended Schedule E/F (Doc. No. 13), the Defendant removed the $103,551.66 priority claim owing to the IRS for his 2015 personal income taxes. The total amount of priority unsecured debt was listed as $0.00 and no other edits were made to the nonpriority unsecured debt. (*Id.* at 13-20.)

29.  On his Second Amended Schedule E/F (Doc. No. 15), the Defendant made no further edits to the First Amended Schedule E/F (Doc. No. 13).[3]

30.  On Schedule G (Doc. No. 8 at 21), the Defendant listed two vehicle leases - one with Ally Bank and one with United Leasing.  However, the Defendant did not disclose what the vehicles were either on Schedule G or on the Statement of Intentions (*Id*. at 36-37).  One month later on March 5, 2018, Ally Bank Lease Trust filed a motion for relief from stay identifying the vehicle as the Maserati.

---

[3] It appears that the Amended Declaration Concerning Debtor's Schedules dated and signed by the Defendant on March 7, 2018 and attached to Doc. No. 13 at 28 is identical to the declaration attached to Doc. No. 15 at 13.

31. Schedule I (Doc. No. 8 at 23-24) reflects that the Defendant is employed as an Operations Manager for "StretchZone/Aventus" from whom he receives gross income of $3,630.84 per month.[4] The Defendant also lists income/dividends of $980.00 per month. The non-filing spouse, Jennifer Dunn Seaberg ("NFS"), is employed as a Realtor and receives gross income of $4,750.00 per month. The NFS also earns income/dividends of $2,500.00 per month. After payroll deductions, the Defendant's household combined monthly take-home income is $11,704.21.

32. Schedule J (Doc. No. 8 at 25-26) reflects that the Defendant and NFS support two minor children and incur household expenses of $11,527.01 per month.

33. According to the Defendant's Statement of Intentions (Doc. No. 8 at 36-37) and Amended Statement of Intentions (Doc. No. 33 at 19-22), the Defendant intends to: (i) retain and reaffirm the debt on his homestead; (ii) retain and reaffirm the debt on his Truck; (iii) retain and reaffirm the debt related to his golf cart; (iv) surrender his Boat; (vii) reject the vehicle lease on the Maserati (Ally Bank); and (viii) reject the lease with United Leasing on an unidentified vehicle.

**C.  Statement of Financial Affairs: The Rolex Sale**

34. The Defendant's original Statement of Financial Affairs ("SOFA") (Doc. No. 8 at 28-35) reflects a watch sale for $24,600.00 in November 2017 to "Top Notch Watch" in New York in response to the inquiry at Line 18 which states: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" (*Id.* at 32.)

---

[4] This figure appears to conflict with the Defendant's testimony and bank records. The Defendant testified that he was receiving $500.00 bi-monthly from each Stretch Zone franchise. According to the Defendant's bank statements for January 2018, he was receiving these payments from four entities: (i) Stretch Windermere, LLC; (ii) Stretch LM, LLC; (iii) Stretch Nashville, LLC; and (iv) Stretch OV, LLC. As a result, his gross wages would appear to be more accurately stated as at least $4,000.00 per month.

35. After the initial Meeting of Creditors, the Defendant filed the First Amended Statement of Financial Affairs ("First Amended SOFA"; Doc. No. 13) to reflect on Line 18 that this sale actually generated proceeds of $34,600.00.[5]

36. In September 2017, the Defendant purchased a Rolex "Skywalker"[6] model watch for approximately $40,000.00 from Mayor's Jewelry ("Rolex"). To facilitate this purchase, the Defendant opened a credit account with Mayor's Jewelry for approximately $33,000.00 and funded the down payment of approximately $7,000.00 - $8,000.00 with another consumer credit card.

37. Approximately two months after the purchase, on November 20, 2017, the Defendant sold his Rolex with his NFS's watch for a total of $34,600.00 ("Rolex Sale").

38. According to the First Amended SOFA, the Defendant allocates $24,600.00 of the total proceeds from the Rolex Sale to himself and $10,000.00 to the NFS.

39. According to the First Amended SOFA, the NFS used $5,000.00 of her portion of the Rolex Sale proceeds as a capital contribution to Stretch Windermere, LLC.

40. According to the Defendant's testimony at the Meeting of Creditors and 2004 Examination, the Defendant did not attempt to return the Rolex and never made a payment on the Mayor's Jewelry credit account.

41. No additional transfers were disclosed on the Schedules.

---

[5] Second Amended SOFA (Doc. No 16) filed on March 20, 2018 is incomplete and contains only the first three pages of the form. There does not appear to be any changes on these pages from the First Amended SOFA (Doc No. 13).

[6] While the Bankruptcy Documents (including the SOFA) identified the Defendant's Rolex as a "Sky Walker" model, the Defendant testified at the Meeting of Creditors and referred to the watch as a "Sky Dweller" model. Despite this discrepancy, the UST believes the Defendant was referring to the same Rolex that was purchased from Mayor's Jewelry in September 2017.

**D. Disclosed Business Interests and Transfers of Business Interests**

42.     On the original (Doc. No. 8) and amended Schedule A/B (Doc. No. 33), the Defendant listed his current interests in two corporate entities: (i) 100% ownership of Fitness Fixt LLC valued at $0.00; and (ii) a 7% ownership of Kans LLC valued at $350.00. (*See* Doc. No. 33 at 6.)

43.     On the original SOFA (Doc. No. 8) and First Amended SOFA (Doc. No. 13), in response to the inquiry at Line 27 stating:

> Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?
> ☐ A sole proprietorship or self-employment in a trade, profession, or other activity, either full-time or part-time;
> ☐ A member of a limited liability company (LLC) or limited liability partnership (LLP);
> ☐ A partner in a partnership;
> ☐ An officer, director, or managing executive of a corporation

the Defendant disclosed two businesses: (i) Grow Fitness Group Inc.; and (ii) Fitness Fixt Inc. The Defendant did not include the dates for when the businesses existed, although an amendment to disclose that information was requested by the Chapter 7 Trustee at the Meeting of Creditors. The Defendant did not identify the type of connection he had with each entity from the available list.

44.     According to the records of the Florida Department of State: Division of Corporations, within the 4 year period preceding the filing of the Main Case, the Defendant had ownership interest in the following entities which he did not disclose in the Schedules, including, but not limited to: (i) Stretch Zone Windermere, LLC; (ii) Stretch LM, LLC; (iii) Stretch WP, LLC; (iv) Stretch OV, LLC; (v) Stretch Nashville, LLC; (vi) Stretch Clemson, LLC; (vii) Seaberg Holdings, LLC; (viii) Mobile Padding, LLC; (ix) CM Bros Holdings, LLC; (x) The Aventus Group, LLC; and (xi) Grow Development Group LLC.

## COUNT I
### Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A)
**[The debtor, with intent to hinder, delay, or defraud a creditor . . . transferred . . . or concealed . . . or has permitted to be transferred . . . or concealed . . . property of the debtor, within one year before the date of the filing of the petition]**

45. The Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 44 supra.

46. Section 727(a)(2)(A) provides that the Court shall grant a debtor a discharge unless, the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the debtor, within one year before the date of the filing of the petition. 11 U.S.C. § 727(a)(2)(A).

47. The Defendant transferred his interest in businesses including, but not limited to: (i) Stretch Windermere, LLC; (ii) Stretch WP, LLC; (iii) Stretch LM, LLC; (iv) The Aventus Group, LLC; and (v) Seaberg Holdings, LLC[7] ("Undisclosed Businesses") within one year before the filing of his case with the intent to hinder, delay or defraud a creditor or officer of the estate.

48. Based on the Defendant's testimony, the Defendant transferred his interests in the Undisclosed Businesses to his NFS in November 2017.

49. Based on the Defendant's testimony, in exchange for the transfers of his interests in the Undisclosed Businesses, the Defendant did not receive any consideration.

50. Based on the Defendant's testimony, the Defendant's daily function, access to bank accounts, and salary did not change after the transfers of the Undisclosed Businesses.

---

[7] At the time such transfers were executed, Seaberg Holdings, LLC held interests in (i) Stretch Nashville, LLC; (ii) Stretch OV, LLC; and (iii) Stretch Clemson, LLC.

51. Based on the Defendant's testimony, as of June 2018, the Defendant remained integrally involved in the operations of the Undisclosed Businesses.

52. The Defendant sought to hinder, delay and defraud his creditors and/or the Chapter 7 Trustee, an officer of the estate charged with custody of property under the Bankruptcy Code, by transferring, removing and/or concealing his interests in the business entities including, but not limited to (i) Mobile Padding, LLC; and (ii) CM Bros Holdings, LLC, and failing to disclose such interests in the Schedules.

53. The Defendant also transferred his interest in the Rolex within one year before the filing of the Main Case with the intent to hinder, delay or defraud a creditor and officer of the estate.

WHEREFORE, the Plaintiff respectfully requests that the Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2) and for such other relief and the Court deems appropriate.

**COUNT II**
**Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(3)**
[**The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, and such act or failure to act was not justified under all of the circumstances of the case.**]

54. The Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 53 supra.

55. Section 727(a)(3) provides that the Court shall grant a debtor a discharge unless, the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3).

56. On June 1, 2018, the Plaintiff filed and served the Defendant with the Notice of 2004 Examination and request for documents.

57. The following documents were requested, but not produced by the Defendant: (i) copy of the Defendant's 2017 personal tax return; (ii) corporate tax returns for the Defendant's business entities[8] for the period of 2015 through 2017; (iii) copies of all business formation documents; (iii) copies of all corporate resolutions or transfers of ownership interests; (iv) copies of all lease agreements; (v) copies of inventory and equipment records reflecting their current disposition for the Defendant's business entities whether current, voluntarily or administratively dissolved; (vi) copies of the transactional documents regarding the Rolex purchase from Mayor's Jewelry; (vii) the December 2017 bank statement for the Defendant's joint checking account ending in #7021; and (viii) copies of credit card statements (collectively "Requested Documents").

58. Pursuant to the Notice, the Defendant was required to produce the Requested Documents no later than June 22, 2018.

59. Plaintiff did not receive the Requested Documents.[9]

60. In response to the Notice, counsel for the Defendant informed counsel for the Plaintiff that the Defendant did not have the Requested Documents.

61. Upon information and belief, the Defendant, based on his failure to furnish the Requested Documents, has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Defendant's financial condition or business transactions might be ascertained.

---

[8] The business entities which were the subject to these Requested Documents included: Grow Fitness Group, Inc., Fitness Fixt, Inc., Kans LLC, Seaberg Holdings, Stretch OV, LLC, Stretch Windermere, LLC, Stretch LM, LLC, Stretch WP, LLC, Stretch Nashville, CM Brothers Holdings LLC, Mobile Padding, LLC and Aventus Group, LLC.

[9] The Plaintiff acknowledges that other documents requested pursuant to the Notice were provided.

62. As a result, and pursuant to 11 U.S.C § 727(a)(3), the Defendant's discharge should be denied.

WHEREFORE, the Plaintiff respectfully requests that the Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3) and for such other and further relief the Court deems appropriate.

### COUNT III
### Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A)
**[The debtor has knowingly and fraudulently, in or in connection with the case . . . made a false oath or statement]**

63. The Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 62 supra.

64. The Defendant committed false oaths in the Schedules.

65. The Defendant committed false oaths at the Meeting of Creditors when he affirmed that the Schedules were complete and truthful.

66. The Defendant committed false oaths at the 2004 Examination when he affirmed that the Schedules, even after several amendments, were complete and truthful.

67. Failure to disclose all assets and/or transfers as required in the Schedules, Bankruptcy Documents, and Amendments when declared by the Defendant's signature to be true and correct under penalty of perjury constitutes a false oath.

68. The Defendant committed false oaths when he failed to list all of his present business interests on his Schedules, including, but not limited to (i) Mobile Padding, LLC; and (ii) CM Bros Holdings, LLC.

69. The Defendant committed a false oath when he failed to disclose the transfer of his interests in business entities, including, but not limited to: (i) Stretch Windermere, LLC; (ii) Stretch

WP, LLC; (iii) Stretch LM, LLC; (iv) The Aventus Group, LLC; and (v) Seaberg Holdings, LLC, on his Schedules.

70. The Defendant committed a false oath when he failed to disclose his connection to businesses within the 4-year pre-petition period, including, but not limited to, Grow Development Group, LLC on his Schedules.

71. The Defendant committed a false oath when he failed to list all of his assets on his Schedules, including, but not limited to, a retirement account and college savings accounts.

72. The Defendant's false oaths were knowing.

73. The Defendant's false oaths were made with an intent to deceive.

74. The Defendant's false oaths were material.

75. The Defendant's false oaths were material because they concealed important aspects of the Defendant's financial dealings and household income and expenses.

76. The Defendant's pattern of false oaths shows a reckless disregard for the truth.

WHEREFORE, the Plaintiff respectfully requests that the Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4) and for such other relief and the Court deems appropriate.

## COUNT IV
### Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(5)
[**The debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.**]

77. The Plaintiff re-alleges and incorporates herein the allegations contained in paragraph 1 through paragraph 76 supra.

78. Section 727(a)(5) provides that the Court shall grant a debtor a discharge unless the debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities.  11 U.S.C. § 727(a)(5).

79. The Defendant has failed to adequately explain the loss or transfer of the cash proceeds from the Rolex Sale. The Defendant has not provided an adequate explanation to identify the goods and/or services purchased with these proceeds, where the property and/or the services purchased are currently located, and/or the disposition of such property.

80. The Rolex Sale proceeds of $34,600.00 were deposited on November 20, 2017 into the joint checking account that the Defendant maintains with his NFS, an account ending in #7021. On November 24, 2017, $5,000.00 of the Rolex Sale proceeds was transferred to the Stretch Windermere, LLC checking account ending in #6789 consistent with the Defendant's remarks on the Amended SOFA. (*See* Doc. No. 13 at 24.)

81. Numerous bank statements from the Defendant's joint checking account ending in #7021 were provided to the Plaintiff.  However, the bank statement showing the transactions for the period of December 7, 2017 through January 8, 2018 were not provided to the Plaintiff.  While the Defendants' joint checking account ending in #7021 held a balance of $16,085.75 on December 6, 2017, the next bank statement provided for this account was dated January 9, 2018 and reflects a beginning balance of $5,156.89.  Thus, the Plaintiff is unable to determine the disposition of the Rolex Sale proceeds.

82. Accordingly, the Defendant's discharge should be denied for failure to satisfactorily explain the loss of assets.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(5), and for such other and further relief the Court deems appropriate.

Dated:   July 20, 2018

Respectfully Submitted,

Daniel M. McDermott
United States Trustee
Region 21

/s/  Audrey M. Aleskovsky
Audrey M. Aleskovsky, Trial Attorney
United States Department of Justice
Office of the United States Trustee
Florida Bar No.: 0103236
400 W. Washington Street, Suite 1100
Orlando, FL 32801
Telephone No.: (407) 648-6301, Ext. 130
Facsimile No.: (407) 648-6323
Email: Audrey.M.Aleskovsky@usdoj.gov